UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BEAUREGA MITCHELL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FCI-HERLONG,<br><br>Respondent. | No. 2:25-cv-1213 CSK P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Petitioner is a federal inmate proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner paid the filing fee. Petitioner seeks an order directing application of earned time credits under the First Step Act ("FSA"). (ECF No. 1.) Respondent's motion to dismiss is before the court.

As discussed below, respondent's motion should be granted.

I.  BACKGROUND

Petitioner is an inmate currently housed at the Federal Correctional Institution -- Herlong.

A review of the docket from the District of Hawaii, which this Court takes judicial notice of, reflects that on December 10, 2018, petitioner was charged with illicit drug-trafficking offenses.[1] United States v. Mitchell, No. 18-CR-00195-HG (D. Haw.); (ECF No. 8-1 at 94, 28-

---

[1] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both

1

34).  In March 2019, petitioner pled guilty to conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (ECF No. 8-1 at 100.)

Petitioner was sentenced to 170 months in federal prison, and judgment was entered on March 11, 2021.[2]  (Id. at 120.)

Bureau of Prisons ("BOP") records reflect that petitioner is eligible to earn and apply First Step Act ("FSA") Earned Time Credits ("ETCs").  (Id. at 7-8.)  Petitioner's current projected release date is January 4, 2030, assuming he receives good conduct credit.[3]  (ECF No. 18-1 at 3, 31-32.)  Respondent confirms that under the FSA, petitioner has earned twelve months of earned time credits.

II.     THE § 2241 PETITION

In his first claim, petitioner alleges the BOP has failed to properly calculate and apply petitioner's FSA ETCs.  (ECF No. 1 at 4-6.)  Despite meeting all FSA criteria and earning substantial ETCs, petitioner contends that the BOP has arbitrarily limited petitioner to 365 days of credit toward early release, refusing to apply the remaining 1,407 days to his conditional placement.  (Id.)

In his second claim, petitioner contends that the BOP's implementation of the FSA violates petitioner's due process rights and constitutes arbitrary and capricious agency action in violation of the Administrative Procedures Act.  (Id. at 6-7.)  Petitioner contends he has earned 1,772 days of ETCs through documented participation in authorized programs while maintaining a low risk score, yet the BOP limits application of the credits to 365 days.  (Id. at 6.)  Petitioner

---

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

[2]  When petitioner was charged with the drug trafficking offenses in 2018, petitioner was on federal supervision for a prior 2005 drug trafficking offense, in United States v. Mitchell, No. 1:05-CR-0052-HG (D. Haw.). (ECF No. 8-1 at 2-3, 25-26.)  Petitioner admitted this violation, and as a result, petitioner was sentenced on March 10, 2021, to a concurrent term of 27-months' imprisonment.  (Id.)

[3]  This date was calculated as of July 29, 2025, the date petitioner's report was run by the BOP. (ECF No. 8-1 at 17-23.)

1  also claims that the BOP has implemented internal memoranda and program statements that
2  conflict with the statutory text of 18 U.S.C. §§ 3632(d)(4) and 3624(g), resulting in the
3  misapplication of lawfully earned credits, including (1) failing to apply credits on a rolling basis;
4  (2) imposing a 365 day cap on credits; (3) improperly sequencing SCA placement before
5  applying ETC's; (4) delaying recognition of credits until the final year of incarceration.  (Id. at 7.)
6  Petitioner contends these applications do not comport with statutory requirements and result in
7  the continued imprisonment of petitioner beyond his lawful release date.  (Id.)

8    In his third claim, petitioner argues that this misapplication of FSA credits undermines the
9  statute's purpose, which in addition to incentivizing inmates to program productively, was to
10 apply credits as they accrue to shorten the actual time inmates remain in prison.  (Id. at 7.)
11 Petitioner contends that by capping the accrual of credits to 365 days and delaying sequencing
12 until the final year of incarceration, respondent renders FSA ETCs "functionally meaningless."
13 (Id. at 8.)  Petitioner maintains that Congress designed the FSA to change the actual time served.
14 (Id.)

15   In the fourth claim, petitioner contends that in light of the Supreme Court finding that
16 Chevron deference no longer applies, this Court must exercise independent judgment when
17 interpreting statutes and "may not defer to an agency interpretation simply because a statute is
18 ambiguous."  (Id. (citing Loper Bright Enterprises v. Raimondo, 143 S. Ct. 2439 (2023).)[4]
19 Petitioner argues that after Loper Bright, this court may no longer rely on internal memoranda
20 and policy manuals not subject to public notice and comment to justify limits and sequencing
21 models not found in the statutory text.  (ECF No. 1 at 9.)  Instead, the court is required to apply
22 the statute as written, regardless of internal agency policy, and argues that the 365 day cap is
23 unlawful.  (Id.)

24   Further, petitioner argues that requiring him to exhaust administrative remedies is futile
25 and would result in further illegal incarceration.  (Id.)  In any event, petitioner contends he has
26 exhausted all administrative remedies required by law and made a good faith effort to resolve the

---

[4] The citation provided by petitioner is incorrect.  The correct citation is Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244 (2024).

3

1    misapplication of his ETCs.  (Id. at 10.)  On March 6, 2025, petitioner filed a formal request for
2    administrative remedy, but the BOP did not respond until April 9, 2025, exceeding their 20 day
3    deadline by 14 days.  (Id.)  Thus, petitioner contends he was entitled to treat the failure to timely
4    respond as a denial, and could seek judicial review.  (Id.)
5         Petitioner seeks a declaratory judgment, and an order requiring the BOP to recalculate and
6    apply all of petitioner's ETCs, and direct the BOP to adjust petitioner's conditional placement to
7    no later than March 24, 2025.
8    III.    LEGAL STANDARDS
9         A.  Rule 4
10        Under Rule 4, if a petition is not dismissed at screening, the court "must order the
11   respondent to file an answer, motion, or other response" to the petition.  Rule 4, 28 U.S.C. foll.
12   § 2254.  A motion to dismiss a petition for writ of habeas corpus is construed as a request for the
13   court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases.  O'Bremski v. Maass,
14   915 F.2d 418, 420 (9th Cir. 1990).  Under Rule 4, a district court must dismiss a habeas petition if
15   it "plainly appears" that the petitioner is not entitled to relief.  See Valdez v. Montgomery, 918
16   F.3d 687, 693 (9th Cir. 2019); Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998).
17        B.  Section 2241
18        A federal inmate challenging the manner, location, or conditions involved in the execution
19   of their sentence, may file a habeas corpus petition pursuant to 28 U.S.C. § 2241.  Hernandez v.
20   Campbell, 204 F.3d 861, 864 (9th Cir. 2000) (per curiam).  Jurisdiction over a § 2241 petition lies
21   in the district of the prisoner's confinement.  Id.  Petitioner's challenge to the computation of his
22   sentence by the BOP is properly raised in a § 2241 petition since it challenges the manner in
23   which his sentence is being executed.  See Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015).
24        C.  First Step Act
25        On December 21, 2018, the First Step Act was enacted and implemented a number of
26   prison and sentencing reforms, including computation of good time credits, reducing and
27   restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the
28   Fair Sentencing Act, and the availability of early release.  First Step Act of 2018, Pub. L. No.

4

115-391, 132 Stat. 5194 (2018).  The FSA created a system that incentivizes federal prison inmates to participate in evidence-based recidivism reduction programs and productive activities by allowing them to earn First Step Act earned time credits against their sentences.  See 18 U.S.C. § 3632(d)(4).  Those incentives include early release credits of "10 days of time credits for every 30 days of successful participation" in such programs.  18 U.S.C. § 3632(d)(4).  Inmates with minimum or low risk for recidivism receive an additional 5 days of time credits per thirty completed program days.  18 U.S.C. § 3632(d)(4)(A)(i).  The release is not a shortening of the sentence, but allows BOP to transfer the inmate from incarceration to "prerelease custody" (home custody or in a residential reentry center) and/or to early supervised release, the latter for a maximum of 365 days earlier than otherwise allowed.  18 U.S.C. § 3624(g)(2) and (3).

Under the terms of the FSA, ETCs can only be earned and awarded for days spent in "successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  Such programming must be assigned by BOP based on, among other things, the inmate's recidivism risk assessment ("RRA") score.  18 U.S.C. § 3632(a)(3).  The RRA score is determined by BOP "as part of the intake process."  18 U.S.C. § 3632(a)(1).  Therefore, as a practical matter, no ETCs can be earned or awarded until an inmate arrives at a BOP facility, goes through the intake process, is assigned an RRA score, is assigned to a recidivism program or activities, and successfully completes them.

While ETCs can be earned and awarded regardless of the inmate's recidivism risk rating, limits apply to the application of the credits, including:  (a) timing; (b) improvement in risk of recidivism; (c) risk status at the time; and (d) approval by warden based on specific criteria.  18 U.S.C. § 3624(g)(1).

### D.  Administrative Exhaustion

The BOP has adopted an administrative review process for inmate grievances that "seek formal review of an issue relating to any aspect of his/her own confinement."  See 28 C.F.R. § 542.10(a).  Initially, inmates are required to first attempt informal resolution by submitting a BP-8 form.  (ECF No. 8-1 at 3.)  The BOP inmate grievance procedure involves three formal levels of review starting with the institution where the grievance occurred.  See 28 C.F.R.

§ 542.13. The inmate initiates the formal review by submitting a BP-9 form. (ECF No. 8-1 at 3.) If the inmate is dissatisfied with the first level of review, he or she may then appeal to the Regional Director by filing a BP-10 form, and then can file a BP-11 form to the General Counsel of the BOP. See 28 C.F.R. § 542.15; (ECF No. 8-1 at 3). The decision by the General Counsel constitutes the final administrative decision by the BOP. Id. The specific procedures to be followed at each level of review as well as the timeframe in which the agency is required to respond to the grievances has been established by regulations. See 28 C.F.R. § 542.10 et seq.

IV.     THE PARTIES' ARGUMENTS

    A.   Respondent's Position

Respondent argues that the petition must be dismissed because petitioner did not exhaust administrative remedies, failing to complete one step in the administrative remedy process, and counters that petitioner's futility argument is conclusory and insufficient to justify excusing the exhaustion requirement. (ECF No. 8 at 3-4.)

As to petitioner's first, third and fourth claims, respondent argues that the BOP has correctly calculated petitioner's projected FSA ETC offset. (Id. at 4.) Contrary to petitioner's claim four, as a matter of law, only a maximum of 365 days of ETCs may be applied toward an inmate's early transfer to supervised release. (Id. (citing 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(d); ECF No. 8-1 at 6).) Contrary to petitioner's first and third claims, the BOP determined petitioner is eligible to earn ETCs, and that as of January 25, 2025, petitioner successfully earned 1,402 days in program activity credit. (Id. at 5-6 (citing ECF No. 8-1 at 7).) Although the BOP disallowed petitioner 50 days outside program during his transit, the BOP properly determined petitioner has earned 295 days in program to be applied toward prelease custody, and earned the statutory 365 days in program to be applied toward early transfer to supervised release. (Id. at 6 (citing ECF No. 8-1 at 86-88).) Respondent points out that these calculations are subject to change because petitioner must meet all of the requirements for the ETCs to be applied toward his sentence computation. (Id.; ECF No. 8-1 at 88; see 18 U.S.C. § 3624(g)(1); 28 C.F.R. §§ 523.44(b) - (d).) But accepting these variables, respondent contends that petitioner's projected statutory release date, with the application of 365 ETCs, is January 4,

2031; and his projected satisfaction date, referred to as the "PRD" in Program Statement 5410.01 CN-2, is January 4, 2030.  (Id. (citing ECF No. 8-1 at 88).)  Projecting petitioner's continued eligibility, respondent argues that the BOP may apply petitioner's remaining 295 days of ETCs to his projected satisfaction date for possible transfer to a residential reentry center ("RRC") or home confinement on July 9, 2027.  (Id.)

Respondent argues that the Court lacks jurisdiction to grant petitioner's demand to be placed in a halfway house or RRC, because such decision does not fall within the "core of habeas" relief.  (Id. at 6-7.)

Finally, as to petitioner's second claim, respondent contends that "Congress explicitly exempted BOP decisions regarding individual inmates under 18 U.S.C. § 3624 from the judicial review provisions of the Administrative Procedure Act ("APA")."  (ECF No. 8 at 10 (citing 18 U.S.C. § 3625).)  Respondent points out that the Ninth Circuit confirmed that review of a BOP decision under the relevant subchapter is improper:

> [t]here is no ambiguity in the meaning of 18 U.S.C. § 3625.  The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701 – 706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621- 3624.

Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011).

In support of the motion to dismiss, respondent submitted a declaration of Christopher Liwag, the Sr. Correctional Programs Specialist with the BOP, who reviewed petitioner's prisoner records.  (ECF No. 8-1 at 2-8.)  Mr. Liwag described the three-level administrative review process available to federal inmates challenging BOP actions and confirms that petitioner did not exhaust his administrative remedies through all formal levels prior to filing this action.  (Id. at 3-4.)  Rather, petitioner began by filing a request for administrative remedy (BP-9), which was received on March 31, 2025, assigned ID 1235224-F1, and denied by the Warden on May 21, 2025.  (Id. at 4.)  After plaintiff filed the § 2241 petition on April 28, 2025, petitioner's appeal (BP-10) was received at the BOP's Western Regional Office on June 17, 2025, and assigned ID 1235224-R1.  (Id.)  The regional director issued an informational response on July 9, 2025.  (Id.)  Thus, the BOP administrative appeals process continued months after petitioner filed the federal

7

petition in this case.

B.  Petitioner's Opposition

Petitioner argues further exhaustion is not required because he made a diligent attempt, but that in any event, further exhaustion would be futile, and adds that courts routinely waive exhaustion. (ECF No. 9 at 1.) Petitioner contends the BOP has misapplied FSA credits; he claims he has earned 1,762 credits since March 10, 2021, but the BOP only applied 1,397 after subtracting a year and applying unverified sequence. Petitioner argues that the BOP's incorrect calculation resulted in a projected community transfer date of May 2027, and claims he should be transferred March 8, 2026 or sooner under 18 U.S.C. § 3632(d)(4). (Id.) Petitioner contends that this court has the authority to correct these miscalculations, citing out of Circuit district court cases. (Id.)

Petitioner reiterates that the BOP's reliance on internal BOP policy to interpret FSA application timing and credit calculation is not entitled to Chevron deference where it contradicts the plain language of 18 U.S.C. § 3624(g). (Id.) Petitioner contends his claim is ripe because he has earned credits, which are confirmed in BOP records; the issue is that the BOP failed to timely and properly apply them, and petitioner claims he is being held beyond his statutory release window. (Id.)

C.  Respondent's Reply

Respondent did not file a reply.

V.  DISCUSSION

Respondent submitted undisputed evidence that petitioner did not exhaust administrative remedies prior to bringing this action. (ECF No. 8-1 at 3-4, 42, 48.) Even though Section 2241 does not contain an explicit exhaustion requirement, federal inmates are still required to exhaust their administrative remedies before seeking habeas relief. See Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam). Courts have engrafted this administrative exhaustion requirement into § 2241 in order to: 1) develop a factual record that is capable of being reviewed; 2) conserve judicial resources if relief is granted at the administrative level; and 3) provide the administrative agency with the first opportunity to correct its errors. See Ruviwat v. Smith, 701

8

F.2d 844, 845 (9th Cir. 1983) (per curiam).  The Court finds that these concerns are particularly relevant to the calculation of petitioner's earned time credits pursuant to the First Step Act.  The BOP should be given the first opportunity to address petitioner's argument that he is entitled to an additional 1,407 days of earned time credits.  In addition, waiving "the exhaustion requirement in this case would only encourage other inmates to ignore the BOP's administrative remedy program."  Cacayorin v. Derr, 2023 WL 2349596, at *3 (D. Haw. Mar. 3, 2023).  Thus, the Court will not excuse petitioner's failure to exhaust his administrative remedies.

Petitioner argues that requiring him to exhaust administrative remedies would be futile.  (ECF No. 1 at 9.)  In Section 2241 cases, dismissal for failure to exhaust administrative remedies is not required, but is a matter left to the court's discretion if exhaustion would be futile.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  Here, as argued by respondent, petitioner's contention that further exhaustion would be futile is conclusory.

The Court declines to exercise its discretion to waive the exhaustion requirement in petitioner's case.  Thus, the undersigned recommends granting respondent's motion to dismiss based on petitioner's failure to exhaust his administrative remedies.  See Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984) (emphasizing that a federal inmate is required to exhaust the BOP's administrative procedures before seeking habeas relief in order to preserve an adequate record for judicial review)); see, e.g., Alcaras v. Thompson, 2022 WL 3030512, at *2 (E.D. Cal. Aug. 1, 2022) ("Whether Petitioner has participated in any activities which could entitle him to earned-time credit, and whether those credits should have already been calculated and applied, are exactly the types of factual questions that extend beyond statutory construction and require a developed record for this Court to consider."), report and recommendation adopted, 2022 WL 16855885 (E.D. Cal. Nov. 10, 2022); Mohammad v. Thompson, 2022 WL 4484545, at *3 (E.D. Cal. Sept. 27, 2022) ("The BOP should be given the first opportunity to address petitioner's argument that he is entitled to a total of 180 days of earned time credits.  Thus, the court will not excuse petitioner's failure to exhaust his administrative remedies.") (citing Chua Han Mow, 730 F.2d at 1313); Lister v. Gatt, 2021 WL 4306316, at *5 (C.D. Cal. Sept. 22, 2021) ("The assessment of whether a prisoner's programming qualifies for earned time credit status

under the First Step Act and, if so, to what extent, as well as how it affects his sentence, falls particularly within the BOP's expertise and should be undertaken by the agency before a federal court is asked to make such assessment and calculations. . . .").

VI. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 8) be granted; and
2. This action be dismissed without prejudice, but without leave to amend, due to petitioner's failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 7, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/mitc1213.mtd.2241.f&rs

10